# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          No. CR 12-2376 JH

EUGENE TOBY JARAMILLO,

        Defendant.

## REPORT AND RECOMMENDATION[1]

THIS MATTER is before the Court on Defendant Eugene Toby Jaramillo's ("Mr. Jaramillo") Motion for <u>Franks</u> Hearing and to Suppress Evidence,[2] filed December 6, 2012. [Doc. 30.] On January 11, 2013, Plaintiff United States ("government") filed a response, and on January 17, 2013, the government filed notice of supplemental authority in support of its response. [Doc. Nos. 35, 36.] Mr. Jaramillo did not file a reply, and the deadline for doing so expired. On February 13, 2013, the government filed a motion for leave to file an exhibit that should have been attached to its original response. The Court granted the motion and considered the exhibit. [Doc. Nos. 40,

---

[1]Within fourteen (14) days after a party is served with a copy of this Report and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendation. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the analysis and recommendation. If no objections are filed, no appellate review will be allowed. *See, e.g.*, <u>Wirsching v. Colorado</u>, 360 F.3d 1191, 1197 (10th Cir. 2004) ("firm waiver" rule followed in Tenth Circuit holds that a party who fails to object to magistrate judge's findings and recommendations in timely manner waives appellate review of both factual and legal questions).

[2]On December 17, 2012, the District Court referred this motion to the undersigned Magistrate Judge, in accordance with 28 U.S.C. § 636(b)(1)(B), to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of this motion. [Doc. 31.]

41, Ex. 2.] After careful consideration of the pertinent law, along with the pleadings and exhibits, the Court recommends that Mr. Jaramillo's Motion for <u>Franks</u> Hearing and to Suppress Evidence be denied.

### Background

Mr. Jaramillo asks the Court to schedule a <u>Franks</u> hearing, in accordance with <u>Delaware v. Franks</u>, 438 U.S. 154 (1978), and to suppress all evidence seized pursuant to a State search warrant obtained and executed on August 25, 2012. [Doc. 30, at 1.] In support of the motion, Mr. Jaramillo contends that the affidavit in support of the search warrant, prepared and signed by Bernalillo County Deputy Sheriff and Task Force Officer Charles Bouyer ("TFO Bouyer"), contains false statements and material omissions of fact.   Mr. Jaramillo further alleges that TFO Bouyer knowingly, intentionally, or with reckless disregard for the truth made the false statements and factual omissions and that these statements and omissions were necessary to a finding of probable cause.   Mr. Jaramillo ultimately asks that all evidence seized in accordance with the State search warrant be suppressed. [Doc. 30, at 13.]

According to Mr. Jaramillo, he is charged in a one-count indictment for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  At the pertinent time, Mr. Jaramillo was under the supervision of the State of New Mexico Department of Corrections, Adult Probation and Parole Office. [Doc. 30, at 2; *see also* Doc. 40, Ex. 2 ("Order of Probation").] Mr. Jaramillo sets forth the following background facts in relation to the search of his home.

> On or about August 25, 2012, . . . TFO Bouyer . . . assisted State of New Mexico Probation and Parole officers on a field call at the residence of the Defendant in Belen, New Mexico.  The Defendant was not home at the time of the visit, but a female identified as Isabel Trujillo was at the residence.  During a search of the residence .03 grams of alleged methamphetamine [were] found.

2

[Doc. 30, at 2-3.]

Mr. Jaramillo recounts that TFO Bouyer stated he began a narcotics investigation of Mr. Jaramillo prior to August 25, and that during the investigation, TFO Bouyer learned that Mr. Jaramillo had been frequenting the Secure Self Storage facility in Los Lunas.  According to TFO Bouyer, this fact was confirmed by managers of the storage company through photo and electronic card activity.  Mr. Jaramillo asserts that TFO Bouyer went to Secure Self Storage on August 25 and reviewed the facility's computer system that purportedly showed that Mr. Jaramillo "would make four to five trips a day to his storage [unit] and would stay less than 10 minutes." [Id., at 3.]

Mr. Jaramillo further notes that the search of his residence on August 12, 2012 yielded a "firearm, ammunition, a 1970's era rocket propelled anti-tank weapon [LAW rocket], and equipment that could be utilized for a methamphetamine lab.  The LAW rocket was . . . destroyed the next day."

### Mr. Jaramillo's Motion/Government's Response

In support of the motion, Mr. Jaramillo specifies that TFO Bouyer made the following material omissions and false statements in his affidavit in support of the search warrant:

(1)    while TFO Bouyer stated Mr. Jaramillo was not present at his residence on the date of the search that revealed 0.3 grams of alleged methamphetamine, TFO Bouyer omitted to state that another person was present at Mr. Jaramillo's home; thus, a judicial officer was unable to inquire about the possibility that the alleged methamphetamine belonged to the other person rather than Mr. Jaramillo;

(2)    while TFO Bouyer stated that Mr. Jaramillo frequented the storage facility in Los Lunas and that Mr. Jaramillo's presence there was confirmed by photo and electronic card activity, TFO Bouyer omitted to say that electronic card activity merely indicated Mr. Jaramillo's name on certain dates; someone else, however, could have had Mr. Jaramillo's entry code; thus the electronic card activity did not verify who accessed the storage unit;

3

(3)     TFO Bouyer falsely stated that he confirmed "through photos" that Mr. Jaramillo frequented said storage unit, but the affidavit of the storage facility manager provides evidence that the manager did not show any still photos or video to TFO Bouyer on August 25; and

(4)     TFO Bouyer falsely stated that Mr. Jaramillo made "four or five trips a day" to his storage unit, which was confirmed by GPS tracker data (entry/exit records) when the data records actually showed an individual accessed the storage unit in question 18 times from August 3 through August 25, 2012, at most twice per day.

Mr. Jaramillo argues that the above-described "substantial preliminary showing" that TFO Bouyer made false statements and material omissions knowingly, intentionally, or with reckless disregard for the truth, demonstrates he is entitled to a Franks hearing to determine whether the evidence seized should be suppressed.  Moreover, he asserts that the described false and omitted statements were necessary to a finding of probable cause; in other words, the affidavit's remaining content, apart from the alleged false statements and material omissions, was insufficient to establish probable cause. [Doc. 30, at 11.]

The government responds that Mr. Jaramillo failed to make a "substantial preliminary showing" sufficient to warrant a Franks evidentiary hearing.  The government asserts that TFO Bouyer did not make any false statements or material omissions in the search warrant affidavit.  In addition, the government argues that the search warrant contains sufficient probable cause, even if the affidavit were lacking, and that the "good faith exception" applies. [Doc. 35.] The government further notes that Defendant's storage facility could have been searched without a search warrant in the first place, based on Mr. Jaramillo's probation agreement that provides for a search of Defendant's property if reasonable cause exists to believe the search will provide evidence of a violation of a condition of probation. [Doc. 35, at 9; Doc. 40, Ex. 2.]

More specifically, in response to Mr. Jaramillo's assertions that the affidavit contains false representations and material omissions, the government states the following.

(1)     while TFO Bouyer's affidavit did not indicate the presence of another person at Mr. Jaramillo's residence on the date of the search, such omission is "insignificant and irrelevant" because the seizure of methamphetamines at a person's residence is sufficient nexus between the defendant and contraband; another person's presence at the residence is commonplace; moreover, the methamphetamine was seized in a common area, inside the refrigerator, rather than in a secreted area of a bedroom clearly belonging to someone else;

(2)     the alleged omission that the electronic card activity could not verify that it was Defendant himself who accessed the storage unit, is not an omission; one can infer that there is always a possibility that someone else might have key or electronic card access to a storage unit, but this does not undo the evidentiary value of electronic card activity linking this defendant to the storage facility;

(3)     Mr. Jaramillo has turned around the facts.  TFO Bouyer took a photograph with him to the storage unit and confirmed Defendant's identity with the manager of the facility; thus, while true that the manager did not show Bouyer photos or videos, this is immaterial in view of what did occur; and

(4)     TFO Bouyer did not deliberately lie in his affidavit regarding the number of daily visits Mr. Jaramillo made to his storage unit.  TFO Bouyer approximated four to five daily trips, based on Bouyer's conversation with the storage unit manager, but the manager was unable to provide an exact print-out of Mr. Jaramillo's visits to the storage unit that day.  TFO Bouyer drafted his affidavit on August 25 without having access to the detailed log of electronic card activity that was provided to law enforcement on August 30, five days after execution of the search warrant.  In any event, GPS activity generally corroborated Mr. Jaramillo's consistent visits to the storage facility.

According to the government, based on the above-described explanation of alleged misrepresentations or omissions, Mr. Jaramillo failed to make a sufficient showing that TFO made deliberate falsehoods or material omissions.  Thus, Mr. Jaramillo is not entitled to a Franks hearing,

and the Court "should rule that the search warrant contained sufficient probable cause and rule on the submitted pleadings alone." [Doc. 35, at 8.]

## Legal Standard

"Under Franks, a court must void a search warrant and suppress 'the fruits of the search' if the court '(1) finds that the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant and (2) concludes, after excising such false statements and considering such material omissions, that the corrected affidavit does not support a finding of probable cause.'" United States v. Allen, 416 F. App'x 754, 757-58 (10th Cir. Mar. 22, 2011) (unpublished) (citing United States v. Garcia–Zambrano, 530 F.3d 1249, 1254 (10th Cir. 2008)).  However, under Franks, there is a "presumption of validity with respect to the affidavit supporting the search warrant." Id. at 171.

To warrant a Franks hearing a defendant must "make[] [a] substantial showing that the [search warrant] affidavit contains intentional or reckless false statements and [that] the affidavit, [if] purged of its falsities, would not be sufficient to support a finding of probable cause." United States v. Kennedy, 131 F.3d 1371, 1376 (10th Cir. 1997) (citing Franks, 438 U.S. at 155-56), cert. denied, 525 U.S. 863 (1998).  "[T]he standards of deliberate falsehood and reckless disregard set forth in Franks apply to material omissions, as well as affirmative falsehoods." Id. (quotation marks omitted).

## Discussion

A.    Statements or Omissions

This is not a case where a defendant fails to identify specific alleged misrepresentations or material omissions.  Mr. Jaramillo identified two alleged material omissions and two alleged false statements. [Doc. 30, at 1-2.] However, in examining the affidavit in support of the search warrant,

6

along with the government's response, the Court concludes that there is no evidence to support a finding that TFO Bouyer deliberately, intentionally, or recklessly made false statements or material omissions in the affidavit.  Alternatively, to the extent that the affidavit contained omissions or contained inaccuracies, the Court deems those omissions or inaccuracies to be immaterial to the finding of probable cause.  In addition, the Court finds that even without the alleged omissions or misrepresentations, TFO Bouyer's affidavit still provided the state court judge with a substantial basis for concluding probable cause existed for the search warrant.

In reaching these findings, the Court analyzes each representation or omission Mr. Jaramillo identified in his motion, along with the entirety of the affidavit. [Doc. 30; Doc. 35, Ex. 1.] TFO Bouyer summarized his law enforcement experience and training, specific related to narcotics laws and their enforcement.  He stated he had made numerous narcotic related arrests and had testified on narcotic related cases during the thirteen years he worked for Bernalillo County Sheriff's Department ("BCSD"). [Doc. 35, Ex. 1, at 3.]

At the pertinent time, TFO Bouyer was assigned to the BCSD's Narcotics Unit that was responsible for the investigation of narcotics and enforcement.  He also was assisting probation and parole at Mr. Jaramillo's residence in Los Lunas, New Mexico.  During a search of Mr. Jaramillo's residence, .03 grams of methamphetamines were found.  It was uncontested that Mr. Jaramillo was the owner of the residence, although he was not present at the time of the search.  The Los Lunas Probation and Parole officer supervisor then placed an arrest and hold on Mr. Jaramillo. [Id.]

In the affidavit, TFO Bouyer stated he had started a narcotics investigation on Mr. Jaramillo over the past month (before the search and seizure) based on "two probationers who had come back with positive drug[] test[s] for Methamphetamines.  Both probationers state they had bought

Methamphetamines and other narcotics from [Mr.] Jaramillo.  One subject over dosed on the drug."
[Id.]

TFO Bouyer further stated in his affidavit that during the investigation, he learned Mr.
Jaramillo was frequenting the storage unit in question and that this information was confirmed by
"the Managers of the storage company thru photo and electronic card activity.  Also [Mr. Jaramillo]
is on a High Risk status with probation and parole which means he is on a GPS tracker . . . ." [Id.]

TFO Bouyer's affidavit also states that in the "last 24 hours," the agent was contacted by a
New Mexico State Police detective who informed TFO Bouyer that a female victim reported Mr.
Jaramillo, AKA Tattoo, "had given her large amounts of Methamphetamines and other unknown
narcotics." [Id.]

TFO Bouyer averred in the affidavit that he visited the storage unit in question that morning
(of August 25, 2012) and contacted the managers.  The storage company's computer system
"showed that Eugene Jaramillo would make four to five trips a day to his storage and would stay less
than 10 minutes.  This was also confirmed by the GPS tracker from Probation and Parole."  [Id. at
4.] TFO Bouyer stated he could see that on the days Mr. Jaramillo was to report to probation, he
would stop by his storage right after meeting with his probation officer. [Id.] Based on TFO
Bouyer's training and experience, he found this type of activity to be consistent with the sale of
methamphetamine and other drugs.

TFO Bouyer did not mention in his affidavit that another person was present at Mr.
Jaramillo's residence during the search that revealed 0.3 grams of methamphetamine in Mr.
Jaramillo's refrigerator.  However, the Court does not find this omission to be material.  There is
no dispute that Mr. Jaramillo owned the residence and no dispute that methamphetamine was found
in the general living area, in contrast to a particular bedroom of a guest.

8

Mr. Jaramillo argued that TFO Bouyer intentionally failed to state in his affidavit that the electronic card activity from the storage unit company did not actually confirm that only Mr. Jaramillo could have been accessing and exiting the storage unit on the numerous dates in question. Instead, Mr. Jaramillo takes the position that the electronic card activity shows nothing more than someone was accessing it on those occasions. However, there is no evidence that anyone else had access to Mr. Jaramillo's storage unit, nor evidence that the storage unit was not in Mr. Jaramillo's name. The Court finds this omission to be immaterial as well.

In addition, the Court determines that even if considered material, both omissions are, at most, negligent or inadvertent omissions. There is no evidence, other than self-serving, conclusory statements by Mr. Jaramillo, showing that TFO Bouyer intentionally or recklessly omitted that information.

The Court next reviews Mr. Jaramillo's accusation that TFO Bouyer falsely stated he confirmed through "photos" that Mr. Jaramillo frequented the storage unit. Mr. Jaramillo supplied an affidavit statement from Stephen Rathburn, the facility manager of Secure Self Storage, Inc., in which Mr. Rathburn stated he did not show any still photos or video surveillance footage to TFO Bouyer on August 25. [Doc. 30, Ex. C.]

The Court notes that TFO Bouyer's affidavit did not state that the storage company manager showed him photos or video footage on August 25. Instead, the affidavit specifically states TFO Bouyer learned that Mr. Jaramillo had been "frequenting the storage units" in question and that this was confirmed by the storage company's managers "thru photo and electronic card activity." [Doc. 35, Ex. 1, at 3.] The government explains the use of the term "photo" in the affidavit referred to TFO Bouyer showing a photo of Mr. Jaramillo to the manager(s), who were able to identify Mr. Jaramillo as the individual frequenting the storage unit.

9

While the language used in the affidavit is somewhat vague and omits reference that TFO Bouyer specifically brought along a photo of Mr. Jaramillo that he showed to the manager(s), the Court does not find evidence demonstrating that TFO Bouyer intentionally, knowingly, or recklessly made a false statement about the photo in the affidavit.  At most, TFO Bouyer unintentionally made a confusing statement about the photo.  Moreover, Mr. Rathburn's affidavit statement does not contradict TFO Bouyer's contention that he showed the manager a photo of Mr. Jaramillo.  Indeed, the affidavit confirms that Mr. Jaramillo was renting the storage unit in question and that Mr. Rathburn showed TFO Bouyer an entry/exit report "for Mr. Jaramillo's storage unit on a computer screen," but did not provide the printed copy of the report" to law enforcement until some days later. [Doc. 30, Ex. C.]

With respect to Mr. Jaramillo's contention that TFO Bouyer made a false statement that Mr. Jaramillo made "four or five trips a day to his storage unit," it is true that TFO Bouyer made that statement in the affidavit and that the statement was not entirely accurate.  However, as confirmed by Mr. Rathburn's affidavit, it is uncontested that TFO Bouyer made these representations based on looking at a report on a computer screen, and that a hard copy of the report was not provided until five days later.  Thus, according to the government, TFO Bouyer's statement that Mr. Jaramillo made four or five trips a day to his storage unit was an approximation derived from Bouyer's understanding of Mr. Jaramillo's storage unit entries and exits.

It is undisputed that Mr. Jaramillo made several trips to the storage unit on many days between August 3, 2012 and August 25, 2012.  In fact, Mr. Jaramillo admits that the "storage unit was accessed eighteen times" during this time frame, "at most twice a day." [Doc. 30, at 2.] The Court finds that TFO Bouyer did not intentionally, knowingly, or recklessly make a false statement concerning the number of times Mr. Jaramillo visited his storage unit during this period.

Moreover, TFO Bouyer confirmed the storage unit activity by speaking to Mr. Jaramillo's probation officer and was advised that the GPS generally corroborated Mr. Jaramillo's consistent visits to the storage facility.  There is no question that Mr. Jaramillo made frequent and regular visits to his storage unit during the pertinent time frame.  At most, TFO Bouyer's statement  about frequency of storage unit visits was a misstatement.  *See* <u>United States v. Colonna</u>, 360 F.3d 1169, 1174 (10th Cir/) ("misstatement in an affidavit that is merely the result of negligence or inadvertence, as opposed to reckless disregard for the truth does not invalidate a warrant"), *cert. denied,* 543 U.S. 823 (2004).

### B.    Other Sufficient Content in Warrant Affidavit

Even if Mr. Jaramillo successfully demonstrated that TFO Bouyer acted knowingly, intentionally, or with reckless disregard in making material omissions or false representations, the Court concludes that the alleged omissions or false statements were not necessary to a finding of probable cause, in view of other information in the search warrant affidavit.  Such information includes references to two occasions on which Mr. Jaramillo provided methamphetamine to other probationers and a reference to a female victim identifying Jaramillo to state police as a person who gave her large amounts of methamphetamine and other narcotics.  The affidavit also indicates that TFO Bouyer found 0.3 grams of methamphetamine in Mr. Jaramillo's residence and that GPS indicated Mr. Jaramillo made trips to his storage unit.

Thus, the Court determines that the uncontradicted and uncontested statements in the affidavit, apart from the challenged omissions and statements, were sufficient to establish probable cause.  In determining whether a search warrant is supported by probable cause, the court reviews "the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and simply ensuring that the [court or judge] had a substantial basis for concluding

11

that probable cause existed." United States v. Cooper, 654 F.3d 1104, 1123-24 (10th Cir. 2011) (quotation marks omitted). "Probable cause means that there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 1124 (citations and quotation marks omitted). The Court concludes, that the remaining information in the search warrant was sufficient to support a finding of "a fair probability that contraband or evidence of a crime" would be found in the storage shed. Accordingly, the Court recommends denying a Franks hearing, as Mr. Jaramillo did not satisfy his burden of making a substantial preliminary showing that TFO Bouyer intentionally, knowingly, or recklessly made false statements or material omissions in the affidavit.

### Recommendation

Based on the above-stated reasons, the Court recommends denying Mr. Jaramillo's request for a Franks hearing. Accordingly, the Court also recommends denial of Mr. Jaramillo's motion to suppress, to the extent that the request for suppression is based on alleged misrepresentations or omissions in the affidavits.

_Lorenzo F. Garcia_

Lorenzo F. Garcia
United States Magistrate Judge

12